## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>    PLAINTIFF,<br>v.<br><br>NALCO COMPANY, LLC, AND ECOLAB, INC.,<br>    DEFENDANTS. | CIVIL ACTION<br>NO. 25-1339<br><br>JURY DEMAND |

### COMPLAINT

#### NATURE OF THE ACTION

This is an action under the Age Discrimination in Employment Act of 1967 (the "ADEA"), Title I of the Americans with Disabilities Act, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of age and disability and to provide appropriate relief to Trina Goehring ("Ms. Goehring"). The defendants, Nalco Company, LLC, and Ecolab, Inc. (collectively "Defendants") discriminated against Ms. Goehring under the ADEA when they conditioned her employment on her submission to an EKG because she was 40 years of age or older, and violated the ADA because the EKG was not administered to all employees in the same entering class of jobs, as required for post-offer, pre-employment medical examinations. Subsequently, the defendants violated the ADA by disclosing confidential medical information obtained during its post-offer medical examination and by excluding Ms. Goehring from employment based on disability, including by requiring that she be free of any restrictions, as set forth more specifically below.

#### JURISDICTION & VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 7(b) of the Age

1

Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) ("ADEA"), which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217. This action is also authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000(e)-5(f)(3). The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Louisiana.

## PARTIES

3.    Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference 42 U.S.C. § 2000e-5(f)(1) and (3). The Commission is also the agency of the United States of America charged with the administration, interpretation, and enforcement of the ADEA and is expressly authorized to bring this action by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of the Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

4.    At all relevant times, Defendant Nalco Company, LLC ("Nalco"), a Delaware limited liability company, has continuously been doing business in the State of Louisiana and the city of Garyville, Louisiana, and has continuously had at least 20 employees.

5. At all relevant times, Defendant Ecolab, Inc. ("Ecolab"), a Delaware corporation, has continuously been doing business in the State of Louisiana and the city of Garyville, Louisiana, and has continuously had at least 20 employees.

6. At all relevant times, each Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 101(5) and (7) of the ADA, 42 U.S.C. §§ 12111(5) and (7) and Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

7. Defendant Nalco Company, LLC, is a subsidiary of Defendant Ecolab, Inc. All the acts and failures to act alleged in this Complaint were performed by and attributable to each of the two Defendants, as an integrated enterprise. The two Defendants operate, or operated during the relevant time period, with shared personnel, policies and management, and have, or had during the relevant time period, interrelated operations, centralized control of labor relations, common management, and common ownership and financial control.

8. Nalco and Ecolab were at all relevant times Ms. Goehring's joint employer in regard to her job offer and the terms and conditions of her employment.

9. Each Defendant's registered agent for service of process is C T Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816.

ADMINISTRATIVE PROCEDURES

10. More than 30 days before the institution of this action, Ms. Goehring filed a charge of discrimination with the Commission alleging violations of the ADEA and ADA by Defendant Nalco Company, LLC.

11. On or about April 18, 2024, the Commission issued to both Defendants a Letter of Determination finding reasonable cause to believe that Defendants violated the ADEA and the

ADA and inviting them to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

12. The Commission thereafter engaged in communications with Defendants to provide the opportunity to remedy the discriminatory practices described in the Letter of Determination.

13. On or about June 20, 2024, the Commission issued to Defendants a Notice of Conciliation Failure advising Defendants that the Commission was unable to secure from them a conciliation agreement acceptable to the Commission.

14. All conditions precedent to the institution of this action have been fulfilled.

STATEMENT OF CLAIMS

15. Since at least January 2022, Defendants have engaged in unlawful employment practices in violation of Section 623(a) of the ADEA, 29 U.S.C. § 623(a) and in violation of the ADA, 42 U.S.C. §§ 12112(a), (b) and (d).

    A. Nalco and Ecolab provide water, energy, and air improvement services.

    B. On or about January 6, 2022, Defendants offered Ms. Goehring a Logistics Specialist position for which she had applied and interviewed.

    C. Ms. Goehring had the necessary skills, experience and qualifications for the Logistics Specialist position.

    D. Nalco and Ecolab were at all relevant times Ms. Goehring's joint employer in regard to her job offer.

    E. Nalco and Ecolab were at all relevant times an integrated enterprise.

    F. Defendants specified that their offer was "contingent upon the successful completion and satisfactory results of" enumerated post-offer screenings, including a medical

4

examination, for which Defendants instructed Ms. Goehring to report to Corporate Health Resources, Inc. ("CHR").

G. At all relevant times, Defendants had a contractual relationship with CHR.

H. During Ms. Goehring's medical exam on or about January 14, 2022, Defendants, through CHR, required Ms. Goehring to take an electrocardiogram ("EKG") because she was 40 years or older.

I. Ms. Goehring was ineligible for employment without taking the EKG.

J. Defendants' conditioning Ms. Goehring's employment on her taking the EKG discriminated against Ms. Goehring with respect to her terms, conditions, and privileges of employment because of her age.

K. Defendants' requiring Ms. Goehring to take the EKG violated the ADA because the EKG was not required of all entering employees, who must be subjected to any such an examination regardless of disability.

L. During Ms. Goehring's medical exam on or about January 14, 2022, Defendants, through CHR, instructed Ms. Goehring to complete a form titled "Nalco Ecolab Preplacement Physical Examination," which asked Ms. Goehring to disclose her current medications. In response, Ms. Goehring disclosed that she was on Lamotrigine, a prescription medication used to treat bipolar disorder in adults.

M. The form titled "Nalco Ecolab Preplacement Physical Examination" also included 106 inquiries, such as whether Ms. Goehring had or has had "Venereal Disease," "Excessive Worry or Depression," "Vaginal Discharge," and asked for her "Number of Miscarriages." Ms. Goehring disclosed she had experienced "Excessive Worry or Depression" and wrote "Bipolar disorder" in an area asking her to "explain any 'yes' answer or other conditions

5

not listed." As such, Defendants' post-conditional-offer medical examination and inquiries called for and led to her disclosure of her condition of Bipolar Depression.

N. Ms. Goehring suffers from Bipolar Depression. This condition substantially limits one or more major life activities, evaluating her condition in the absence of the ameliorating effects of medications and treatments for the condition.

O. Bipolar Depression is an impairment within the meaning of the ADA.

P. Ms. Goehring has a record of Bipolar Depression.

Q. As a result of the "Nalco Ecolab Preplacement Physical Examination," CHR learned of Ms. Goehring's condition of Bipolar Depression.

R. Defendants suspended the hiring process because of Ms. Goehring's impairment.

S. Defendants took one or more adverse actions against Ms. Goehring because of her impairment.

T. Defendants perceived Ms. Goehring's Bipolar Depression as an impairment.

U. Given that Defendants took adverse employment actions against Ms. Goehring because of her real or perceived impairment, she was regarded by Defendants as a person with a disability.

V. At all relevant times, Ms. Goehring could perform the essential functions of the Logistics Specialist position with or without reasonable accommodation.

W. On or about January 24, 2022, Emily Morris of CHR instructed Ms. Goehring to have her treating psychiatrist fill out a form that inquired whether Ms. Goehring could safely and effectively manage her Bipolar Depression and contained questions about Ms.

6

Goehring's treatment plan, medications, her ability to perform her duties, and contained a blank section for comments/restrictions. The form inquired whether Ms. Goehring was able to meet the essential functions of her job without restrictions. Attached to the form was a description of the Logistics Specialist position.

X. Ms. Goehring told Ms. Morris that her psychiatrist could not complete the form. As such, Ms. Goehring was unable to comply with Defendants' follow-up medical inquiries. Ms. Morris instructed Ms. Goehring that she needed to get the form completed but that, alternatively, she could submit a doctor's note stating that she was "safe to work with no restrictions." Ms. Morris thereby gave Ms. Goehring to understand that she could only work for Defendants if she had no restrictions.

Y. On or about January 27, 2022, Ms. Goehring informed Madison Brabender, from whom Ms. Goehring had received Defendants' job offer, that she was not comfortable with CHR's medical examination process and asked what would happen if she did not receive final clearance from CHR. Ms. Brabender responded, "It is possible that if you do not provide CHR with the info they request, they could deem you not fit for duty and your offer would be rescinded."

Z. Emily Morris of CHR subsequently sent Ms. Goehring a revised form for her doctor to complete, in which the identity of her psychiatrist, disability, and treatment plan had been removed, but that still inquired whether she could work without any restrictions.

AA. Concluding that she had been excluded from consideration for employment by Defendants because of her inability to satisfy Defendants' medical inquiries, on or about February 3, 2022, Ms. Goehring requested to withdraw her application because of CHR's conduct. Ms. Goehring withdrew from consideration because Defendants had already constructively discharged her, refused to hire her, and/or withdrawn her conditional offer of employment.

7

BB. On or about the following day, Ms. Goehring's prospective supervisor for the Logistics Specialist position at Nalco/Ecolab called her to ask what kind of "accommodations" he could make so that she could proceed. Ms. Goehring, who had not wanted to disclose her Bipolar Depression to her prospective employer, was extremely distressed by this call. The prospective supervisor's knowledge of Ms. Goehring's medical conditions and related matters revealed that Defendants had not properly maintained the confidentiality of medical information, as required by the ADA.

CC. Defendants sent Ms. Goehring a letter stating that they decided to consider other candidates, rescinding Ms. Goehring's job offer. The facts support the conclusion that Defendants rescinded Ms. Goehring's offer before Defendants had learned of her intent to withdraw from consideration.

DD. At all relevant times, Defendants excluded Ms. Goehring from employment because of her disability.

EE. Ms. Goehring's disability was the cause of Defendants' refusal to hire Ms. Goehring.

FF. Ms. Goehring was rejected based on her condition of Bipolar Depression.

GG. If Ms. Goehring did not have Bipolar Depression, Defendants would have finalized her conditional offer of employment, and she would have become Defendants' employee.

HH. If Defendants had not learned that Ms. Goehring had Bipolar Depression, Defendants would have finalized her conditional offer of employment, and she would have become Defendants' employee.

II. Defendants refused to employ Ms. Goehring because of her actual or perceived impairment and/or because of her record of having Bipolar Depression.

    JJ.  Defendants refused to employ Ms. Goehring because she did not provide exhaustive information from her psychiatrist, including whether Ms. Goehring was able to work without restrictions. Ms. Goehring was unable to secure such certification from her doctor, through no fault or lack of cooperation on Ms. Goehring's part.

    KK.  Because Charging Party was unable to satisfy Defendants' impossible medical inquiry — via the exhaustive information demanded from her psychiatrist — Defendants required Ms. Goehring to provide a certification from her doctor that she had "no restrictions." In so doing, Defendants conditioned Ms. Goehring's employment on her being free of any restrictions. Such a condition of employment violates the ADA.

    16.  The effect of Defendants' unlawful employment practices complained of herein has been to deprive Ms. Goehring of equal employment opportunities and otherwise adversely affect her status as an employee because of age in violation of the ADEA and on the basis of disability in violation of the ADA.

    17.  Defendant's unlawful actions complained of herein violated, *inter alia*, 42 U.S.C. §§ 12112(a), 12112(b)(1)-(3), 12112(b)(6), 12112(d)(3)(A), 12112(d)(3)(B), and 12112(d)(3)(C).

    18.  As a result of Defendants' unlawful actions, Ms. Goehring suffered pecuniary, non-pecuniary, and other losses and damages.

    19.  The unlawful employment practices complained of were willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

    20.  Defendants' unlawful actions complained of herein were intentional, based on age and/or disability.

21.     Defendants acted with malice and/or reckless indifference to the federally protected rights of Ms. Goehring when it engaged in the unlawful employment practices complained of above.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concern or participation with Defendants, from discriminating against applicants and employees on the basis of disability, so that the discrimination above that occurred with respect to Ms. Goehring does not occur with respect to others.

B.      Grant a permanent injunction enjoining Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concern or participation with Defendants, from discriminating against applicants and employees on the basis of age, so that the discrimination above that occurred with respect to Ms. Goehring does not occur with respect to others.

C.      Order Defendants to institute and carry out all policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities and individuals 40 years or older and that eradicate the effects of Defendants' past and present unlawful employment practices.

D.      Order Defendants to make Ms. Goehring whole, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices, including but not limited to reinstatement and/or front pay.

E.    Order Defendants to post and keep posted the notices required by the ADA, 42 U.S.C. § 12115, incorporating 42 U.S.C. § 2000e-10(a), and the notices required by the ADEA, 29 U.S.C. § 627.

F.    Order Defendants to make and preserve all records relevant to the determination of whether unlawful employment practices have been or are being committed, in accordance with ADA, 42 U.S.C. § 12117(a), which incorporates Title VII, 42 U.S.C. § 2000e-8(c), and in accordance with the ADEA, 29 U.S.C. § 626(a).

G.    Order Defendants to make Ms. Goehring whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

H.    Order Defendants to make Ms. Goehring whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain and suffering, inconvenience, and humiliation, in amounts to be determined at trial.

I.    Order Defendants to pay punitive damages for Defendants' malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

J.    Order Defendants to pay liquidated damages for Defendants' willful conduct, as described above, in amounts to be determined at trial.

K.    Grant such further relief as the Court deems necessary and proper in the public interest.

L.    Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint that are triable to a jury.

Respectfully submitted,

**Andrew Rogers**
Acting General Counsel
U.S. Equal Employment Opportunity Commission

**Christopher Lage**
Deputy General Counsel
U.S. Equal Employment Opportunity Commission

*/s/ Rudy L. Sustaita*
**Rudy L. Sustaita**
Regional Attorney
U.S. Equal Employment Opportunity Commission

**Gregory T. Juge**
Assistant Regional Attorney
U.S. Equal Employment Opportunity Commission

*/s/ Jacqueline C. Barber*
**Jacqueline C. Barber** (#36362), T.A.
   jacqueline.barber@eeoc.gov |(504) 635-2572
Elizabeth J. Owen (#33620)
   elizabeth.owen@eeoc.gov |(504) 635-2535
Peter F. Theis (#34786)
   peter.theis@eeoc.gov |(504) 635-2548
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New Orleans Field Office
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, LA 70130

COUNSEL FOR U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

**REGISTERED AGENT FOR SERVICE OF PROCESS:**

C T Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816